```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>KEVIN L. JOHNSON,   )<br>)<br>Defendant.   )<br>) | CRIMINAL ACTION NO. 06-10412-PBS |

## MEMORANDUM AND ORDER

May 10, 2007

Saris, U.S.D.J.

### INTRODUCTION

Defendant Kevin L. Johnson, a/k/a "Whammie" is charged with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He seeks to suppress the gun and ammunition recovered by police during a street stop. The government introduced the testimony of police officers Anthony Cutone and Stephen Canto. After an evidentiary hearing, the motion is **DENIED**.

### BACKGROUND

On September 13, 2006 at 7:39 p.m., Boston Police Officers Stephen Canto and Anthony Cutone were in an unmarked vehicle in the area of Warren Street near Blue Hill Avenue responding to a radio call dispatching them to Columbia Road and Washington Streets because of a fight. The officers are involved in the investigation of Boston's street gangs. This Grove Hall section

is a high crime area where there had been multiple shootings in the prior month.  En route to the fight, the officers observed Johnson in the commercial area near a store about 10 feet from the vehicle.  Johnson walked directly in front of the officer's unmarked cruiser.  Cutone knew defendant as "Whammie" from previous incidents, including a prior homicide case where he had been recently acquitted; a prior shooting incident in Grove Hall where he was the victim who was shot multiple times; a firearm-related incident where he was a suspect in shooting at three or four girls just the day before; and a prior firearm conviction for ammunition.  Indeed, the two officers had just been discussing that Whammie was a suspect in the shooting while having coffee at Dunkin' Donuts.  The police decided to ask him about the recent shooting at Warren Gardens, and determine whether he had a gun.  They made a U-turn and pulled around behind him.

While they were in the cruiser, the officers observed that Johnson was wearing a black, hooded sweatshirt and holding his arm tightly attached to his body with his hand concealed inside the sleeve of the sweatshirt.  Johnson's arm did not have a normal swing to it as he walked, and he kept it straight down towards the ground and clamped to his side.  Cutone believed that Johnson was carrying a firearm in his hand inside the sleeve of his sweatshirt.

Although they knew the defendant's name, Cutone got out of

the cruiser and asked him, "What's your name?"  Johnson replied, "Kevin Johnson."  Canto also got out of the car.  Both officers agreed that Johnson was not free to leave at that point.  As they spoke with him, the officers noticed that Johnson pulled his hand further up his sleeve, moved his arm closer to his body, and turned away from the officers.  Several times Cutone ordered, "Let me see your hands!"  At that point, Johnson turned towards Cutone, who feared that he was aiming his gun at him.  Alarmed that he would be shot, Officer Cutone grabbed Johnson's hand that was still inside the sleeve of his sweatshirt and immediately felt a gun.  Shouting "gun" to his partner, they both grabbed Johnson and pinned him on a car hood while seizing his right hand that still had the firearm in it.  The officers called for back-up and continued to struggle with Johnson, whose gun-hand was caught inside the sleeve.  Johnson kept yelling, "Let it go."  They beat his left hand with a leather strap to induce him to let go.  Three other officers arrived and cut away Johnson's sweatshirt in order to seize the gun, a North American Arms .380 caliber pistol with an obliterated serial number and loaded with 6 rounds of .380 caliber ammunition.  A bullet was in the chamber.

Johnson's girlfriend, Chantall Richards, was with him on the street when the incident occurred.  When she became belligerent, she was arrested and charged with being a disorderly person.  During an interview with Special Agent Lisa Rudnicki of ATF, she

said that she had no idea that Johnson was carrying a gun.

The ATF monitored the jail telephone calls between Richards and Johnson after he was held on bail on the state charges from this arrest. During one conversation on September 18, 2006, Johnson stated in substance that he had the gun in his hand, up his sleeve so that the police could not see it. He stated that he should have run because the police would not have caught him. Johnson described the entire incident as: the police pulled up, he tried to be calm and put the gun up his sleeve, but the police saw him and they thought that he was trying to shoot them. Johnson also described the gun as "just a little one." He went on to say that he would take one year in jail if it was offered to him.

## DISCUSSION

A police officer may temporarily stop a citizen "where [the] police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). An officer's beliefs and actions must be reasonable under the "totality of the circumstances." United States v. Romain, 393 F.3d 63, 71. "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

4

The officers both agreed that when Officer Cutone exited the vehicle, the defendant was no longer free to leave.  Thus, for Fourth Amendment purposes, this was the point at which the officers seized the defendant.  See Florida v. Bostick, 501 U.S. 429, 434 (1991) ("So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.") (internal quotation marks omitted).  Therefore, in order for the seizure to pass constitutional muster, the officers must have had an objectively reasonable suspicion that the defendant was involved with criminal activity based only upon the events that occurred before Officer Cutone exited the vehicle.

Based on the totality of the circumstances, I find that the police had a reasonable suspicion that defendant was unlawfully carrying a gun.  I rely on the fact that (1) defendant had been a suspect in a shooting the day before and had prior criminal involvement, including a felony conviction; (2) the officers, based on their experience and training, reasonably believed that defendant's concealed hand and constrained arm movements were consistent with gun-toting; and (3) it was a high crime area. See, e.g., United States v. Moore, 235 F.3d 700, 703-04 (1st Cir. 2000) (finding reasonable suspicion when defendant was in an area known to have a high crime rate, was leaving a building suspected of drug activity, and "clenched his hand in a manner indicating that he was attempting to hide something from the officers");

5

<u>United States v. Mayo</u>, 361 F.3d 802, 807-08 (4th Cir. 2004) (finding reasonable suspicion where defendant was in a high crime area, put his hand in his pocket in a way that suggested he was protecting a gun, turned his body to evade police scrutiny, and exhibited unusually nervous behavior).  In the course of the stop, the officers asked the defendant to show his hands.  When the defendant did not show his hand and turned toward the officers, the officers responded reasonably by grabbing the defendants hands to ensure their own safety, removing the gun, and arresting the defendant.  See <u>United States v. Coplin</u>, 463 F.3d 96, 100 (1st Cir. 2006) ("The officer's initial actions must be justified at their inception and his subsequent actions must be responsive to the emerging tableau -- the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed.") (internal quotation marks omitted).  Therefore, the stop and seizure of the gun were lawful.

The motion to suppress is **DENIED**.

                                                **S/PATTI B. SARIS**
                                                United States District Judge